**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Plaintiff-Respondent,** ) | |
| ) | **No. 05 C 4691** |
| **v.** ) | |
| ) | |
| **WADE HEMPHILL,** ) | **HONORABLE DAVID H. COAR** |
| ) | |
| ) | |
| **Defendant-Petitioner.** ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Wade Hemphill's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 is before this Court. For the following reasons, the motion is DENIED.

**I. FACTS**

Hemphill, along with 13 individuals associated with the Gangster Disciples street gang, was charged in a 36-count indictment for offenses related to a cocaine-distribution ring that operated from 1995 to July 1999. *See United States v. Jackson et al.,* No. 99 CR 545 (N.D. Ill. 1999). Hemphill, in particular, had been observed in November 1998 receiving 373 grams of crack cocaine, and he had been caught on a wiretap discussing the drug operation with another coconspirator. The government charged Hemphill with one count of conspiring to distribute cocaine and one count of possessing with the intent to distribute 373.1 grams of a mixture containing cocaine base. *See* 21 U.S.C. § 841(a)(1), 846. (R. 44 at 1-4, 23.)

Attorney Michael Mann was appointed to represent Hemphill. Given the substantial evidence of Hemphill's involvement in the drug operation, Mann attempted to negotiate a favorable plea deal with the government. Hemphill later testified that he told Mann that he would "really prefer to take a plea if I get my one/third [sentencing reduction] like was said," but that the government had declined to offer him "one/third off." When asked what he told Mann he wanted to do at that point, Hemphill testified, "I told him I'm going to trial." (Posttrial Hr'g Tr. 10/16/2000 11-12.) At Hemphill's suggestion, they developed a defense of coercion. Attorney Mann prepared that defense—somewhat deficiently, as was later discovered—but continued to pursue a favorable plea deal up until the day of trial. (Posttrial Hr'g Tr. 10/11/2000 9-10.)

Hemphill testified at his jury trial. He admitted that he had participated in drug deals, but he testified that he had been threatened, sometimes through beatings (once by an associate named Vernon Everett and three others, and another time by Alex Kinsey and Quincy Jackson, both codefendants). He further testified that Everett, Jackson, and Kinsey had on numerous occasions threatened him and his family with death if he did not agree to sell drugs for them. According to Hemphill, he did not seek help from law enforcement because he believed the police were being paid by the men whom he said had threatened him. Hemphill offered no evidence to corroborate his testimony.

On June 1, 2000, a jury returned a guilty verdict on both counts. Attorney Mann withdrew his representation, and Kent Carlson was appointed to represent Hemphill in posttrial proceedings. On June 6, 2000, Hemphill filed a motion for a new trial. He argued, among other things, that Mann had rendered ineffective assistance by failing to interview

witnesses—including Everett, two of Hemphill's nieces, Pierre Stitts, and Terrell Webster—who would have testified in support of Hemphill's coercion defense. Following an evidentiary hearing, this court initially granted the motion for a new trial, finding that Mann's failure to call Everett as a witness was objectively unreasonable. Upon reconsideration, however, the court denied the motion because Hemphill had not shown that he was prejudiced by his attorney's performance.

Carlson continued to represent Hemphill at sentencing, and he lodged various objections to the probation officer's presentence investigation report. As relevant here, Carlson argued that, absent specific findings by the jury as to drug type and quantity, the court could not sentence Hemphill to more than 20 years' imprisonment without violating the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (R. 287 at 1-6; Cont. Sent'g Tr. 130-33.) This court rejected the argument, noting that the indictment specifically alleged that Hemphill possessed with intent to distribute 373.1 grams of cocaine base, and that the jury's finding of guilt on that count triggered a statutory maximum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii). (Cont. Sent'g Tr. 139.) Carlson also contested, as relevant here, the probation officer's recommendation that Hemphill receive a 2-level adjustment for possessing a gun during the drug conspiracy. *See* U.S.S.G. § 2D1.1(b)(1). (R. 287 at 6-7.) The court again disagreed, citing Hemphill's confession that he possessed a gun while he was involved in the conspiracy. (Cont. Sent'g Tr. 149-50). On December 6, 2001, the court sentenced Hemphill to concurrent terms of 30 years' imprisonment and 5 years' supervised release, along with monetary penalties.

Hemphill retained a new attorney, David Rodriguez, for his appeal to the Seventh Circuit. There he argued that (1) trial-counsel Mann rendered ineffective assistance, and (2) the court erred at sentencing by attributing 1.5-kilograms of crack to Hemphill based on Kinsey's testimony. The Seventh Circuit agreed with Hemphill that, in failing to interview Everett and Stitts, Mann's performance was deficient. *United States v. Hemphill*, 86 Fed. App'x 985, 988-89 (7th Cir. 2004). But the appellate court concluded that Hemphill was not prejudiced by his attorney's omissions because both Hemphill's and the potential witnesses' testimony were not credible. Moreover, continued the panel, Hemphill did not show that the threat he faced was "immediate" and that he had no reasonable opportunity to avoid it. *Id.* at 989. Finally, the appellate court rejected Hemphill's sentencing argument after determining that 1.5 kilograms of crack was a reasonable estimate based on Kinsey's testimony. *Id.* at 990. Hemphill sought rehearing, which was denied.

Rodriguez then filed a petition for a writ of certiorari to the Supreme Court, arguing that the Court should evaluate whether the government's burden of disproving a coercion defense should have been considered in the appellate court's prejudice analysis under *Strickland v. Washington*, 466 U.S. 668 (1984). The petition was denied on October 4, 2004. Less than a year later, on August 15, 2005, this court received Hemphill's *pro se* § 2255 motion.

In his motion, Hemphill identifies ostensibly two grounds for relief. First, he contends that appellate-attorney Rodriguez was deficient for failing to argue that posttrial-attorney Carlson was ineffective. Second, he argues that Rodriguez also was ineffective for failing to argue in his petition for a writ of certiorari that Hemphill's sentence violated the rule announced

in *Blakely v. Washington*, 542 U.S. 296 (2004), which was decided a month before he filed the petition.

Before the government filed its response, on November 2, 2005, this court received Hemphill's motion to supplement his § 2255 motion with an additional ground: that Rodriguez also was ineffective for failing to inform him that he could submit a *pro se* petition for a writ of certiorari to the Supreme Court, where he would have raised his *Blakely* claim. The government then filed a response, and Hemphill filed a reply.

## II. LEGAL STANDARD

Federal prisoners may challenge their detention if their conviction or sentence is based on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal citation and quotation marks omitted); *see* 28 U.S.C. § 2255. If this court determines that such a defect exists in the judgment or sentence, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

In addition, after reviewing the Petitioner's motion, the government's response, and any record of prior court proceedings, the court will determine whether an evidentiary hearing is required. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [court] must dismiss the motion . . . ." Rule 4(b) of the Rules

Governing Section 2255 Proceedings; *see also Almonacid v. United States*, 476 F.3d 518 (7th Cir. 2007).

## III. ANALYSIS

Hemphill has identified three ways in which, he contends, his appellate attorney was ineffective. The government argues that this court should not consider Hemphill's third ground, however, because he did not present it to the court until after the one-year statutory deadline had passed. But ineffective assistance of appellate counsel is a single claim, *see Peoples v. United States*, 403 F.3d 844, 847-48 (7th Cir. 2005), and this court may consider all facts relevant to that claim. *Cf. Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006) (considering additional grounds for ineffective assistance of counsel claim, even though they were not explicitly certified for appeal, because ineffective-assistance claim is "single ground for relief.") Moreover, Hemphill's additional basis for his claim is related to the second ground in his timely § 2255 motion. Specifically, Hemphill put the government on notice of his contention that, in failing to pursue a *Blakely* argument, Rodriguez's representation was deficient during the preparation of his petition for a writ of certiorari. Hemphill's late contention that Rodriguez should have informed him of his right to file a *pro se* petition so that he could raise that *Blakely* argument is "tied to a common core of operative facts" as the earlier ground. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005). Accordingly, the court will treat Hemphill's third ground as a timely amendment to his original motion.

Before reaching the merits of Hemphill's motion, the court first must consider whether it is procedurally barred. According to the government, Hemphill's first ground is simply a

recasting of his claim of ineffective assistance of trial counsel, which was decided against him in his posttrial motion and on appeal. But although assessing Hemphill's argument may require some examination of his trial attorney's performance, he is in fact challenging his appellate attorney's representation, and that is a distinct claim that has not been considered by any court. For the same reason, the court disagrees with the government's contention that Hemphill is procedurally barred from challenging his appellate attorney's failure to raise a *Blakely* argument in his petition for a writ of certiorari. Although on appeal Hemphill did not challenge the sentencing adjustments on Sixth Amendment grounds, that forfeiture does not foreclose his ineffective assistance argument. Whether he can show that he was prejudiced by his attorney's decision is a separate matter, which the court will address in turn.

To show that his appellate attorney's assistance was ineffective, Hemphill must establish that 1) his attorney's performance was objectively unreasonable, and 2) there is a reasonable probability that, but for his attorney's purported errors, the result of the proceeding—in this case, his appeal and his petition for a writ of certiorari—would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Counsel's performance should be evaluated as a whole and not in piecemeal fashion. *See Washington v. Smith*, 219 F.3d 620, 634-35 (7th Cir. 2000).

Hemphill's first contention is a mouthful: he argues that appellate-attorney Rodriguez should have advanced a claim of ineffective assistance of posttrial counsel because, although posttrial-attorney Carlson had argued that trial-counsel Mann was ineffective in failing to interview witnesses who could testify in support of his coercion defense, he did not argue that Mann was ineffective for proceeding to trial with the coercion defense rather than recommending that Hemphill plead guilty. Hemphill's argument is meritless.

First, Hemphill has not made a threshold showing that Rodriguez's appellate strategy was objectively unreasonable. Rodriguez advanced two arguments on appeal: (1) that attorney Mann was ineffective for failing to interview witnesses who would have testified in support of the coercion defense, and (2) that the court erroneously attributed 1.5 kilograms of crack to Hemphill. The first ground initially persuaded this court that Hemphill deserved a new trial, and the Seventh Circuit agreed with Rodriguez that Mann's performance had been deficient. Although this court ultimately reconsidered its decision, and the Seventh Circuit concluded that Hemphill had suffered no prejudice, it was clearly a viable argument. The second ground, meanwhile, was arguably Hemphill's best challenge to his sentence. Although the appeal was unsuccessful, Rodriguez "exercised reasonable professional judgment" in his selection of arguments. *See Wiggens v. Smith*, 539 U.S. 510, 522-23 (2000) (citing *Strickland*, 466 U.S. at 691).

Second, Hemphill has not made a threshold showing that, had Rodriguez pursued the strategy Hemphill suggests, there is a reasonable probability that the outcome of his appeal would have been different. The underlying claim that Hemphill would have liked Rodriguez to fault Carlson for not raising—that Mann was ineffective for advising him to proceed to trial rather than plead guilty—is entirely unsupported by the record. Specifically, there is no evidence that Mann ever advised Hemphill to reject a plea deal. *See Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)). Indeed, there is no evidence that a deal even was on the table. Although Hemphill testified at his posttrial hearing that he would have taken a deal if the government had promised a substantial sentencing reduction, he further testified that the government declined to make that

-8-

offer. Meanwhile, Mann testified that he tried to negotiate a favorable plea deal up until the day

of trial, to no avail. Even if Hemphill could have entered a blind plea, moreover, he has not

established a reasonable probability that his sentence would have been different. Thus, without

support for his argument that Mann was ineffective in this regard, Hemphill could not have

supported a claim that Carson was ineffective for failing to raise the argument.

Attorney Rodriguez's decision to forego a *Blakely* challenge in his petition to the

Supreme Court also was not unreasonable. As the government notes, Hemphill's 30-year

sentence did not exceed the statutory maximum of life imprisonment, which was authorized by

the jury's finding that he possessed 373 grams of cocaine base with intent to distribute. *See* 21

U.S.C. § 841(b)(1)(A)(iii) (prescribing that penalty for 50 grams or more of cocaine base). Thus,

a *Blakely* argument would have been unavailing. And though Hemphill insists that if he had

raised the *Blakely* claim he could have benefitted from *United States v. Booker*, 543 U.S. 220

(2005), that rule was announced after Hemphill's time to file a petition for a writ of certiorari

had expired, and it does not apply retroactively. *See McReynolds v. United States*, 397 F.3d 479,

481 (7th Cir. 2005). Because Hemphill could not have benefitted from a *Blakely* argument,

Rodriguez's decision to forego that challenge was not objectively unreasonable.

Finally, Rodriguez's purported failure to alert Hemphill of his right to file a *pro se*

petition for a writ of certiorari was not deficient. Hemphill obviously was aware of his right to

pursue the petition; he avers that he contacted Rodriguez about potential arguments. And he

does not contend that Rodriguez told him that he could not fire him and file it on his own. In any

event, the argument Hemphill says he would have advanced—the *Blakely* claim—would not

have succeeded, as explained above.

**IV. CONCLUSION**

For the foregoing reasons, Hemphill's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED. This case is closed.

Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

Dated: August 28, 2008